


FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 0 4 2003

at 2 o'clock and 07 min. P.M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 02-00130 HG |
| Plaintiff, | ) | |
| vs. | ) | |
| HERMAN LEMUSU,       (1) | ) | |
| ALOFAGA LEMUSU,      (2) | ) | |
| Defendants. | ) | |

**ORDER DENYING HERMAN LEMUSU'S TWO MOTIONS TO SUPPRESS FILED ON SEPTEMBER 11, 2002**

**AND**

**ORDER DENYING HERMAN LEMUSU'S MOTION TO DISMISS FILED ON NOVEMBER 26, 2002, FOR A VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL**

Defendant Herman Lemusu was arrested in the parking lot of the Kapolei Shopping Center on April 5, 2002, after allegedly selling one-half pound of crystal methamphetamine to an undercover informant on April 3, 2002. That undercover informant, Randon Chung, had been recently arrested and had agreed to cooperate with law enforcement to identify his supplier

of crystal methamphetamine. Through recorded telephone conversations and observed meetings, Chung's narcotics supplier known to him as "Herman" was later identified to be Herman Lemusu.

On September 11, 2002, Defendant Herman Lemusu filed two motions to suppress. One motion seeks to suppress statements and evidence arising from statements made by Herman Lemusu while in custody. The second motion seeks to suppress evidence obtained from the vehicle that Herman Lemusu was riding in, as a passenger, at the time of his arrest. The Government filed a consolidated Opposition to both motions on December 10, 2002. On December 30, 2002, the Court heard oral argument on the two motions to suppress. The Court concludes that statements made by Herman Lemusu were voluntary and the search of the vehicle was lawful. Herman Lemusu's two Motions to Suppress are DENIED.

On November 26, 2002, Defendant Herman Lemusu filed a Motion to Dismiss that he bases on a perceived violation of the Speedy Trial Act. The United States filed an Opposition on December 24, 2002. A hearing was held on the three motions on December 30, 2002. Herman Lemusu filed a Supplemental Memorandum on December 30, 2002, the same day the Court heard oral argument. The Court finds there has been no trial delay resulting in a violation of the Speedy Trial Act. The motion to dismiss is DENIED.

2

**I.   Motion to Suppress Evidence Recovered from the Minivan**

A.   <u>Timeliness of Search</u>

Herman Lemusu argues that the search of the Nissan Quest minivan, in which he was a passenger, was not contemporaneous with his arrest and was therefore improper under <u>New York v. Belton</u>, 453 U.S. 454, 460-61 (1981) and <u>United States v. Ramos-Oseguera</u>, 120 F.3d 1028, 1036 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1135 (1998), <u>overruled on other grounds by</u> <u>United States v. Norby</u>, 225 F.3d 1053, 1059 (9th Cir. 2000). In <u>Ramos-Oseguera</u>, the Ninth Circuit found that the search of a vehicle incident to an arrest must occur contemporaneously with the arrest.

The subsequent cases of <u>United States v. McLaughlin</u>, 170 F.3d 889 (9th Cir. 1999) and <u>United States v. Tank</u>, 200 F.3d 627 (9th Cir. 2000), expanded the definition of "contemporaneously" to mean within five minutes of an arrest.

Herman Lemusu was exceptionally large at the time of his arrest, weighing approximately 400 to 500 pounds. The arresting officers testified that they did not have a vehicle at the scene large enough to transport Lemusu immediately after his arrest. Consequently, Special Agent Dan Brady testified that the arresting officers decided to transport Herman Lemusu to the Honolulu Police Department's Kapolei sub-station in the same Nissan Quest minivan that he rode in to the Kapolei Shopping Center.

Special Agent Timothy O'Malley testified at the motion to suppress hearing that when the Nissan minivan was brought to the Kapolei substation he assisted with an inventory search of the vehicle. Special Agent O'Malley testified that the search began immediately after the vehicle arrived at the substation. Many of the items inventoried were personal and have been returned to the minivan's registered owners, Faavae C. Gago and Palesoo A. Gago. The evidence in question consists of the other items recovered from the minivan, which remain in the custody of the government. These items include: (1) $3,500 in United States currency; (2) a cell phone receipt; (3) two zip-lock bags containing drug residue; and (4) two zip-lock bags of approximately two grams each containing a white crystalline substance that tested positive as methamphetamine. It is this evidence that Defendant Herman Lemusu seeks to suppress.

In South Dakota v. Opperman, 428 U.S. 364, 373 (1976), local police conducted a routine inventory search of an automobile lawfully impounded by police for violations of municipal parking ordinances. Rejecting a Fourth Amendment challenge to the search that uncovered marijuana in a plastic bag, the Court noted that it "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." As the Court explained:

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over stolen property; and the protections of the police from potential danger.

Id. at 369 (citations omitted).

Here, Special Agent O'Malley testified that he followed FBI procedure in conducting a prompt and thorough search of the vehicle in order to protect the vehicle's contents. Herman Lemusu was transported in the Nissan Quest minivan to the Kapolei police sub-station, making it necessary to delay the inventory search until the vehicle arrived at the police sub-station.

The Court finds the testimony of Special Agent O'Malley to be credible. The inventory search was prompt and did not violate Lemusu's Fourth Amendment rights.

B.   Reasonable Expectation of Privacy

The Government additionally argues that Herman Lemusu does not have a reasonable expectation of privacy because the defendant "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." United States v. Portillo, 633 F.2d 1313, 1317 (9th Cir. 1980) quoting Rakas v. Illinois, 439 U.S. 128, 148 (1978). Herman Lemusu was not the driver or the owner of the vehicle. He was a passenger and the Nissan Quest was registered to relatives. The Court finds that Herman Lemusu does not have a reasonable

5

expectation of privacy in the vehicle. He has no interest that the Fourth Amendment protects. Herman Lemusu's motion to suppress evidence recovered from the search of the Nissan minivan is additionally and independently DENIED because he did not have a reasonable expectation of privacy in the contents of the minivan.

## II. Motion to Suppress Statements and Evidence

Herman Lemusu argues that while agents and officers did not directly interrogate him, their actions and the booking questions were intended to elicit incriminating statements. Herman Lemusu further argues that agents and officers did elicit incriminating statements from him and he seeks to have these statements suppressed.

"The test to determine whether questioning is interrogation within the meaning of Miranda is whether under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect." United States v. Salgado, 292 F.3d 1169, 1172 (9th Cir.), cert. denied, ___ U.S. ___, 123 S. Ct. 479 (2002) (internal quotations omitted).

Upon his arrest and transfer to the Kapolei sub-station, Herman Lemusu was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Herman Lemusu then requested an attorney.

Herman Lemusu testified that he was held in a large conference room containing a table and chairs for several hours. Lemusu testified that he was comfortable and that he never felt intimidated. Special Agent Brady and Honolulu Police Department Detective Sato were present in the room with Herman Lemusu. Special Agent Brady, however, left the conference room for a time to acquire medical supplies for Herman Lemusu, leaving Detective Sato with Herman Lemusu.

Special Agent Brady testified that after Herman Lemusu requested an attorney, he notified Lemusu that he could not ask any more investigatory question but would ask some booking questions prior to delivering Lemusu to the Federal Detention Center ("FDC"). These questions included Lemusu's date of birth, social security number and emergency contact information.

While being asked these questions to facilitate booking, Lemusu volunteered that he had special medical needs due to incontinence. Lemusu said that he needed diapers, wet wipes, and a large plastic cup. Special Agent Brady contacted the FDC and learned that staff at the FDC were aware of Lemusu's medical condition. Brady was informed that these items would have to be brought with Lemusu to the FDC. Special Agent Brady testified that he ultimately concluded that he would have to personally purchase these items for Lemusu. Acquiring these items took Special Agent Brady more than one hour.

Honolulu Police Department Detective Dwight Sato testified that throughout the time that Herman Lemusu waited at the Kapolei sub-station awaiting transfer to the FDC, Lemusu was talkative and repeatedly asked questions regarding the investigation and his arrest. Lemusu asked questions such as "you did not find any ice on me, so how can you arrest me?" and "what's going to happen to my cousin?" referring to the driver of the Nissan Quest, Lowell Gago. Lemusu also repeatedly said that he was being set up by his wife's family, that the matter was in God's hands, and that the money he possessed was payment for a truck. Detective Sato also testified that he overheard Lemusu say, "I was just collecting money for ice."

Special Agent Brady testified that each time Lemusu would try and ask a question, Brady would answer that he could not discuss the matter as Lemusu had requested an attorney.

Lemusu also expressed concern about a funeral that he was in town to attend and repeatedly asked to call his mother. Special Agent Brady, however, denied this request out of concern that Lemusu could reveal the identity of the confidential informant, Randon Chung. Agent Brady stated that at that time, other officers and agents were involved in attempting to use Randon Chung in another investigation, which could be compromised if Herman Lemusu revealed Randon Chung's identity as a confidential informant to others. Herman Lemusu was held at the Kapolei sub-

station, even after Special Agent Brady returned with medical supplies, because agents and officers were continuing with an undercover operation that could be jeopardized if Herman Lemusu was allowed to use the telephone or was transferred immediately to the FDC.

The Court concludes from the evidence acquired at the suppression hearing that none of the statements made by Lemusu was the result of questioning that was "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The Court finds that the questions posed to Lemusu after he invoked his right to an attorney were simply booking questions and did not constitute an interrogation. See United States v. Foster, 227 F.3d 1096, 1103 (9th Cir. 2000).

Lemusu himself testified that once he requested a lawyer, the officers never asked him any questions regarding his case. Lemusu also testified that the room was comfortable and that he was never afraid or intimidated. Nothing in Lemusu's testimony supported his allegation that the booking questions asked of him were intended to elicit incriminating statements in violation of Miranda.

The Court finds that Lemusu remained at the Kapolei sub-station while his medical needs were addressed and while other officers dealt with the operations involving the confidential informant. Lemusu's statements to Special Agent Brady and

9

Officer Sato were entirely voluntary and no improper questioning of Lemusu took place. Herman Lemusu's Motion to Suppress Statements and Evidence arising from Lemusu's statements is DENIED.

### III. Motion to Dismiss for Violation of the Speedy Trial Act

Herman Lemusu was arrested on April 5, 2002. He was indicted on April 11, 2002, on one count of distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Lemusu was arraigned on April 17, 2002, and trial was calendared for June 12, 2002. On May 15, 2002, Lemusu acting pro se, moved for new counsel. On May 17, 2002, Magistrate Judge Kurren denied Lemusu's motion for new counsel. On May 23, 2002, Lemusu, again acting pro se, appealed the Magistrate Judge's decision. On May 30, 2002, this Court conducted a hearing on his motion and denied Lemusu's motion to retain new court-appointed counsel.

On June 4, 2002, this Court continued the June 12, 2002, trial date to August 20, 2002, based upon Lemusu's representation that he intended to hire private defense counsel and because of the unavailability of his then appointed counsel due to that attorney's involvement in another federal criminal trial. On June 18, 2002, the parties jointly stipulated, and the Court

approved, a continuance of the trial date to October 22, 2002.

In a letter dated July 25, 2002, Lemusu again moved pro se for an order discharging his court-appointed counsel. On August 9, 2002, the Court conducted a hearing and released Lemusu's court-appointed counsel and directed the appointment of new counsel. In addition, the Court became concerned about Lemusu's odd behavior and strange responses to the Court's questions beginning at the June 4, 2002 and continuing through the August 9, 2002 hearing. As a result of Lemusu's behavior, the Court ordered that Lemusu receive a full competency evaluation. Lemusu was then transferred to the Federal Medical Center in Seatac, Washington and did not return to this district until mid-November.

On September 11, 2002, Lemusu's new counsel filed the two motions to suppress that are addressed in this Order. On September 12, 2002, the Government superseded the Indictment adding separate drug trafficking and money laundering conspiracy charges involving activity in California, Hawaii and American Samoa. The Superseding Indictment also named Herman Lemusu's cousin, Alofaga Lemusu, as a co-defendant in both conspiracies. The Superseding Indictment increased the complexity of the case.

On November 20, 2002, Magistrate Judge Chang found Lemusu competent to proceed and calendered this case for trial on January 22, 2003.

11

On November 25, 2002, the Government filed a motion to Continue Trial based on case complexity and continuity of counsel. The Court heard the Government's motion on December 2, 2002, and granted the Government's motion continuing the trial date to March 25, 2003, excluding the intervening time through March 25 under the Speedy Trial Act. A written order was filed on December 12, 2002.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the "right to a speedy and public trial. The Speedy Trial Act, 18 U.S.C. § 3161, et seq., requires a trial to commence within 70 days of arraignment. See 18 U.S.C. § 3161(c)(1). The Act sets forth several types of excludable delay that do not count against the 70-day limit, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing . . . on such motion." 18 U.S.C. § 3161(h)(1)(F). See Henderson v. United States, 476 U.S. 321, 330 (1986) (holding that "Congress intended subsection (F) to exclude . . . all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'").

In this case, a significant portion of the delay in bringing this case to trial is attributable to Lemusu. He filed the motions with respect to substitution of counsel. Additional time

is attributable to sending Lemusu to Washington state for a mental evaluation. Time is excluded for determination of the mental competency of the defendant. 18 U.S.C. § 3161(h)(1)(A). The Court's June 18, 2002, Order continuing the trial made express findings for an "ends of justice" continuance and that defense counsel was unavailable for the June 12, 2002 trial date. "Where a defendant's own actions contribute to the need for an 'ends of justice' continuance under the [Speedy Trial Act] the defendant cannot complain that the continuance violates his or her speedy trial rights." United States v. Lewis, 980 F.2d 555, 562 (9th Cir. 1992).

At the hearing on December 30, 2002, the Court heard testimony from Lemusu's former attorney, Randy Oyama. He testified to the reasons behind his stipulation for a continuance and the difficulty he had communicating with Lemusu. The Court finds Oyama's testimony to be credible and that it supports the Court's determination as to the dates of delay attributable to Lemusu.

The Court's December 2, 2002, minute order specifically found that the period between January 22, 2003 and March 25, 2003, to be excludable time. That time is attributable to the government's motion seeking continuity of counsel and an extension of time given the complexity of the Superseding Indictment.

13

The Court finds that at least 11 days, from May 15 to May 17, 2002 and May 23 to May 30, 2002, of excluded time are attributable to Herman Lemusu because of his motion and appeal to dismiss his counsel. The Court finds that 133 days are excluded from June 12 to October 22, 2002, that are jointly attributable to Lemusu and the United States, due to the parties' stipulation to continue the trial date and Lemusu's behavior that necessitated a court-ordered mental evaluation. The Court finds that 153 days from October 23, 2002 to March 25, 2003, to be excludable time based on the Government's motion to continue and Lemusu's Motions to Suppress.

In summary, 348 days passed from the date of Herman Lemusu's indictment to the date of his trial. The Court finds that 297 of those days constituted excludable time. Consequently, approximately 51 days of unexcluded time had passed from Lemusu's indictment until trial. As 51 is less than 70, no Speedy Trial Act violation has occurred.

### CONCLUSION

1. Herman Lemusu's Motion to Suppress evidence recovered during the inventory search of the Nissan minivan is DENIED. Lemusu did not have a reasonable expectation of privacy and the evidence was obtained through a proper inventory search.

14

2. Herman Lemusu's Motion to Suppress the statements and evidence generated while Lemusu was in custody at the Kapolei sub-station on April 5, 2002, is DENIED. The Court finds that any statements made by Lemusu were voluntary.

3. Herman Lemusu's Motion to Dismiss on the basis of a Speedy Trial Act violation is DENIED. No violation of the Speedy Trial Act occurred.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 4, 2003

HELEN GILLMOR
United States District Judge

United States v. Herman Lemusu, et al., Criminal No. 02-00130 HG; ORDER DENYING DEFENDANT HERMAN LEMUSU'S MOTION TO DISMISS AND TWO MOTIONS TO SUPPRESS EVIDENCE

15